IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

PRINCE PILGRIM,

                              Civil Action No.
                Plaintiff,    9:11-CV-1331 (GLS/DEP)

        v.

THOMAS LaVALLEY, *et al.*,

                Defendants.

_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF:

PRINCE PILGRIM, *Pro se*
92-A-8847
Woodbourne Correctional Facility
99 Prison Road
P.O. Box 1000
Woodbourne, NY 12788

FOR DEFENDANTS:

HON. ERIC T. SCHNEIDERMAN       KEVIN P. HICKEY, ESQ.
New York State Attorney General  Assistant Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT, RECOMMENDATION, AND ORDER

*Pro se* plaintiff Prince Pilgrim, a New York State prison inmate, has brought this action pursuant to 42 U.S.C. § 1983 against three corrections employees stationed at the facility in which he was confined at the relevant times alleging that they have deprived him of his civil rights. Among the defendants named in his complaint is Curtis Drown, who is identified as a "Commission Hearing Officer." Plaintiff asserts that his due process rights were violated during the course of a disciplinary hearing conducted by defendant Drown.

Although unknown to plaintiff at the time of commencement, defendant Drown died in 2011, prior to the filing of his complaint. After learning of that fact from defendants, the court *sua sponte* ordered the substitution of the estate of defendant Drown ("Estate") in his place as a named defendant in the action.

Following the issuance of a summons for the Estate and a voluntary appearance on its behalf by the New York State Attorney General, the Estate filed a motion seeking dismissal of plaintiff's claims asserted against it. In the Estate's motion, it argues that (1) dismissal is warranted because the initial summons, issued to defendant Drown, was not served within 120 days of its issuance; (2) the substitution of the Estate in the place of

defendant Drown was improvident because he was never a party to the action; and (3) any effort to amend plaintiff's complaint and join the Estate as a named defendant at this late date would be futile in light of the governing statute of limitations.[1] For the reasons set forth below, I recommend the motion be denied.

I.  BACKGROUND

A.  Underlying Facts

Plaintiff is a prison inmate currently being held in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). *See generally* Dkt. No. 1. Plaintiff's claims in this action stem from an order directing his transfer from the Clinton Correctional Facility ("Clinton"), where he was being held at the time, to the Clinton Annex. *Id.* at 9. Plaintiff characterizes the transfer as retaliatory, in response to a grievance filed by him concerning the taxation of inmate cigarette purchases. *Id.* When plaintiff refused to comply with the transfer order, he was issued a misbehavior report, dated December 19, 2008, accusing him of violating prison rules. *Id.* A hearing was subsequently conducted by defendant Drown, beginning on December 26, 2008, to address that misbehavior report. *Id.* at 10. Plaintiff contends that during the course of the

---

[1]     The Estate also requests a stay of discovery pending a final decision regarding the merits of its motion. That request is granted.

hearing, which resulted in a finding of guilt, his due process rights were violated. *Id.* at 11.

B.    Procedural History

Plaintiff's complaint in this action was filed with the court on or about November 10, 2011.[2] Dkt. No. 1. As defendants, the complaint names Ted Meskunas, an institutional steward at Clinton; John Doe, an unknown person who authorized plaintiff's transfer; and Hearing Officer Curtis Drown. *Id.* at 1, 2, 7, 8. Following the dismissal of plaintiff's claims against defendant Meskunas, the court ordered that Thomas LaValley, the Superintendent at Clinton, be added as a named defendant for the limited purpose of permitting plaintiff to engage in pretrial discovery to assist in ascertaining the identity of the Doe defendant. Text Order Dated Nov. 30, 2012.

A summons was issued for defendant Drown on February 22, 2012. Dkt. No. 9. That summons was returned, unexecuted, on April 19, 2012. Dkt. No. 10. A second summons for defendant Drown was issued by the court on April 20, 2012. Dkt. No. 12. That second summons was also returned unexecuted on or about June 20, 2012, with a notation that defendant Drown passed away in 2011. Dkt. No. 13.

---

[2]        Plaintiff's complaint is dated October 28, 2011. *See* Dkt. No. 1 at 14.

On July 12, 2013, in deference to plaintiff's *pro se* status, and based upon representations made by the plaintiff to the court regarding his intention to pursue claims against defendant Drown's estate, I ordered that the Estate be substituted in the place of defendant Drown pursuant to Rule 25(a) of the Federal Rules of Civil Procedure. Dkt. No. 35. A summons naming the Estate was subsequently issued on July 12, 2013. Dkt. No. 36. Service of that summons was accepted on behalf of the Estate by the New York State Attorney General, who filed a notice of appearance on its behalf on July 24, 2013.[3] Dkt. No. 37.

In lieu of answering plaintiff's complaint, the Estate has moved for its dismissal based on three grounds. Specifically, the Estate argues that (1) the complaint should have been dismissed as against defendant Drown based upon the failure to effectuate service within 120 days, as required by the Federal Rules of Civil Procedure; (2) the court improvidently invoked Rule 25(a) to substitute the Estate for defendant Drown; and (3) to the extent amendment of plaintiff's complaint is considered to have been effectuated, the complaint is subject to dismissal on the basis of the governing statute of limitations. Dkt. No. 41. In opposition to the motion,

---

[3]     Although plaintiff has objected to the Attorney General's representation of the Estate of Curtis Drown, claiming the existence of a conflict of interest, Dkt. Nos. 40, 44, the court perceives no conflict precluding that representation.

plaintiff has renewed his objection to the fact of the Attorney General's representation of the Estate. Dkt. No. 44.

The Estate's motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

II.     DISCUSSION

    A.     Failure to Serve Within 120 Days

In its motion, the Estate first argues that, because defendant Drown was not served within 120 days of issuance of the summons, either originally or as re-issued, he should have been dismissed as a party without prejudice. Dkt. No. 41-2 at 8. It follows, according to the Estate, that the court therefore lacked jurisdiction over defendant Drown. *Id.* at 8-10.

It is true, as the Estate argues, that Rule 4(m) of the Federal Rules of Civil Procedure requires that service of a summons be effectuated within 120 days one of its issuance, absent a court order extending that period.[4]

---

[4]     Rule 4(m) provides that,

> [i]f a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for

Fed. R. Civ. P. 4(m). In this case, because defendant Drown died in 2011, the original and re-issued summonses were not served on him within the requisite time period. In addition, it is true, as the Estate now argues, that defendant Drown was therefore never made a party to the action. The appropriate recourse, had it been sought, would have been to dismiss defendant Drown from the lawsuit without prejudice. Because defendant Drown was deceased, however, that relief did not seem either necessary or appropriate.

Turning now to the Estate, the summons that resulted in it being made a party to this action was issued on July 12, 2013. Dkt. No. 36. The New York State Attorney General filed its notice of appearance on behalf of the Estate on July 24, 2013. Dkt. No. 37. The Estate does not now contend that service of that summons was untimely. *See generally* Dkt. No. 41-2. Accordingly, neither Rule 4(m) Federal Rules of Civil Procedure nor rule 4.1(b) of the local rules of practice for this court provides a basis for dismissal in this action as against the Estate.

---

service for an appropriate period.

Fed. R. Civ. P. 4(m). This court's local rules shorten the time for service from the 120 day period under Rule 4(m) to sixty days. N.D.N.Y. L.R. 4.1(b).

B.     Substitution of the Estate of Curtis Drown

The Estate next argues that the court's substitution of it for defendant

Drown was improper because he was never technically a party to the action.

Dkt. No. 41-2 at 8-10.

Rule 25(a) of the Federal Rules of Civil Procedure, which governs

substitution in the event of the death of a party, provides as follows:

> If a party dies and the claim is not extinguished,
> the court may order substitution of the proper
> party. A motion for substitution may be made
> by any party or by the decedent's successor or
> representative. If the motion is not made within
> 90 days after service of a statement noting the
> death, the action by or against the decedent
> must be dismissed.

Fed. R. Civ. P. 25(a)(1). In this case, in deference to his *pro se* status, the

court construed statements by the plaintiff, to the effect that he intended to

pursue the matter against the Estate, as an application for substitution of the

Estate, and granted that relief. Dkt. No. 35. In hindsight, it appears clear, as

defendants argue, that ordering substitution of the Estate pursuant to Rule

25(a) was improvident. When a named defendant has died prior to being

served, the deceased defendant was never a party to the action, and the

substitution procedure prescribed under Rule 25 has no applicability.

*Johnson v. Schiff*, No. 11-CV-0531, 2013 WL 5466218, at *5 (N.D.N.Y.

Sept. 13, 2013) (Dancks, M.J.); *Crosby v. O'Connell*, No. 07-CV-1138, 2010

U.S. Dist. LEXIS 105542, at *36 n.21 (N.D.N.Y. Feb. 22, 2010) (Peebles, M.J.) (citing cases).[5] The better approach would have been for the court to construe plaintiff's letter request, interposed on or about May 22, 2013, Dkt. No. 28-1, as a motion for leave to amend and join an additional party, pursuant to Rules 15 and 21 of the Federal Rules of Civil Procedure. *Crosby*, 2010 U.S. Dist. LEXIS 105542, at *36 n.21. Accordingly, in deciding the Estate's motion, I recommend that the court construe the text order, dated July 12, 2013, as effectively having granted plaintiff leave to amend his complaint and join the Estate as a party as of that date.

C.    Statute of Limitations

In its motion, the Estate argues that if plaintiff is deemed to have requested leave to amend and join it as a defendant, his claims are precluded by the governing statute of limitations and do not relate back to the date of the original pleading under Rule 15 of the Federal Rules of Civil Procedure. Dkt. No. 41-2 at 10-12.

Rule 15 governs motions for leave to amend a complaint. Given the procedural posture of this action on May 22, 2013, the date on which I recommend the court consider plaintiff to have requested leave to amend

---

[5]    Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

his complaint to join the Estate, Dkt. No. 28-1, plaintiff was no longer permitted to amend as a matter of right. Fed. R. Civ. P. 15(a). Thus, he was at that point required to seek leave of the court to amend his complaint. *Id.* That leave would freely have been granted, absent the finding of undue delay, bad faith, dilatory tactics, undue prejudice in being served with a proposed pleading, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *accord, Elma R.T. v. Landesmann Int'l Mktg. Corp.*, No. 98-CV-0662, 2000 WL 297197, at *3 (S.D.N.Y. Mar. 22, 2000).

In this case, the Estate contends that permitting plaintiff to amend his complaint at that juncture would have been futile because his claims "were not properly commenced against the Estate within the requisite three year statute of limitations." Dkt. No. 41-2 at 10 & n.3. According to the Estate, if plaintiff's claims against it were not timely commenced, then the only manner in which plaintiff's claims against the Estate could survive would be if the court were to conclude that they relate back to the date of the original complaint under Rule 15(c). *Id.* at 10-12.

Turning first to the Estate's statute of limitations argument, I note that the applicable limitations period for a section 1983 action is derived from the general or residual statute of limitations for personal injury actions under the laws of the forum state. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989);

*accord*, *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002).

Accordingly, in New York, the statute of limitations for a section 1983 action is three years. N.Y. Civil Practice Law and Rules ("C.P.L.R.") § 214(5); *see also Connolly v. McCall*, 254 F.3d 36, 40-41 (2d Cir. 2001) ("[The plaintiff's] federal constitutional claims, brought pursuant to 42 U.S.C. § 1983, are governed by New York's three-year statute of limitations for personal injury actions[.]"); *accord*, *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1138, 1156 (2d Cir. 1995). A claim arising under section 1983 accrues "when the plaintiff knows or has reason to know of the harm that he seeks to redress." *Connolly*, 254 F.3d at 41 (quotation marks omitted).

According to plaintiff's complaint, the disciplinary hearing conducted by defendant Drown began on December 26, 2008, and was concluded on January 12, 2009. Dkt. No. 1 at 10-12. Because there is no indication that defendant Drown had any further involvement with the plaintiff after January 12, 2009, under ordinary circumstances, plaintiff's due process claim against him would be timely only if interposed on or before January 12, 2012. Under New York State law, however, when "a person against whom a cause of action exists" dies, "the period of eighteen months after [his] death . . . is not a part of the time within which the action must be commenced

against his executor or administrator."[6] N.Y. C.P.L.R. § 210(b). In other words, when determining whether a cause of action has been timely asserted against the estate of a deceased defendant, eighteen months is added to the limitation period governing the cause of action asserted against him. *See Glamm v. Allen*, 439 N.E.2d 390, 394 (1982) ("CPLR 210 (subd. [b]) tolled the Statute of Limitations the moment [the defendant] died, and it resumed running automatically 18 months thereafter. The net effect of applying this statute is to tack 18 months onto the time provided for bringing a . . . cause of action."); David D. Siegel, N.Y. Practice § 55 (5th ed.) ("When the would-be defendant dies before suit, there is a straight 18-month toll. It is easier to remember it this way: 18 months are tacked on to whatever period remains." (footnote omitted)). Accordingly, in this case, plaintiff's claim against the Estate is timely it was asserted on or before July 12, 2013.[7]

On or about May 22, 2013, plaintiff requested the court's assistance in identifying the proper person to substitute for defendant Drown. Dkt. No. 28-1. In deference to plaintiff's *pro se* status, I have recommended that the

---

[6]  "[T]he Supreme Court wanted section 1983 actions to be subject to state 'tolling rules,' [including] both statutory and common law rules[.]" *Pearl*, 296 F.3d at 81.

[7]  Said differently, plaintiff's section 1983 claim against defendant Drown, had defendant Drown survived, would have expired on January 12, 2012. With the addition of the eighteen months to account for tolling pursuant to N.Y. C.P.L.R. § 210(b), however, the statute of limitations was extended until July 12, 2013.

court construe that letter as a motion to amend his complaint and join the Estate, and find that the request was filed before the expiration of the statute of limitations governing his due process claim in this case. Because that relief was effectively granted on July 12, 2013, when the court issued the summons as to the Estate, the claim asserted against it is timely.

Because I have concluded that plaintiff timely interposed his claims against the Estate, there is no reason to conduct a relation-back analysis pursuant to Rule 15(c). *See Farber v. Wards Co., Inc.*, 825 F.2d 684, 689 (2d Cir. 1987) ("Rule 15(c) governs the 'relation back' of amended pleadings only for the purpose of the statute of limitations, which is simply not implicated in this case."); Wright & Miller *et al.*, Federal Practice & Procedure § 1496 (3d ed.) ("Although 15(c) applies to all pleading amendments that satisfy its requirements, the doctrine of relation back is of importance primarily in the context of amendments with leave of court under Rule 15(a) when the statute of limitations is implicated."). Accordingly, I recommend the court deny the Estate's motion to dismiss to the extent it seeks that relief based on the expiration of the governing statute of limitations.

III.   SUMMARY AND RECOMMENDATION

Plaintiff commenced this action against three defendants, including Curtis Drown, a DOCCS hearing officer, alleging that his procedural due process rights were violated during the course of a disciplinary hearing. At the time this action was commenced defendant Drown was deceased. Because plaintiff timely sought to join defendant Drown's Estate as a defendant in this action, and that relief was effectively granted prior to the expiration of the governing statute of limitations, his claim against the Estate is not time barred. Accordingly, it is hereby respectfully

RECOMMENDED that the motion brought by the Estate of Drown to dismiss plaintiff's claims against that defendant be DENIED, and that all of plaintiff's remaining claims, including those asserted against defendant John Doe, survive the Estate's motion to dismiss, and Superintendent LaValle remain a named defendant in the action solely for discovery purposes and in an effort to assist plaintiff in identifying defendant John Doe; and it is further

ORDERED that discovery in this action is STAYED pending a decision from the court concerning this report and recommendation.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with

the clerk of the court within FOURTEEN days of service of this report.

FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72;

*Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

report and recommendation upon the parties in accordance with this court's

local rules.

Dated:     August 12, 2014
           Syracuse, New York

David E. Peebles
U.S. Magistrate Judge


Slip Copy, 2013 WL 5466218 (N.D.N.Y.)
**(Cite as: 2013 WL 5466218 (N.D.N.Y.))**

Ⓗ

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Angelo JOHNSON, Plaintiff,

v.

Michael A. SCHIFF, Lt. William Devito, Thomas
Loughern, Sgt. Friot, Sgt. Shoale,<sup>FN1</sup> Sgt. Ryan,
C.O. Chesebro, C.O. Moscato, C.O. Alemar, C.O.
Rotundo, C.O. Demun, C.O. Parker, C.O. Lacotta,
C.O. John Doe, R.N. Joanne Locke, C.O. Hackett,
Lt. Schult, Defendants.

> FN1. In her affidavit filed in support of the
> motion for summary judgment, this de-
> fendant spells her name "Tonya Shoales."
> The Clerk is directed to change the caption
> to reflect the correct spelling of Defendant
> Shoales' surname.

No. 9:11–CV–0531 (MAD/TWD).
Sept. 13, 2013.

Angelo Johnson, Monticello, NY, pro se.

Levene, Gouldin & Thompson, LLP, Maria
Lisi–Murray, Esq., of Counsel, Vestal, NY, for
Chenango County Defendants.

### REPORT–RECOMMENDATION and ORDER

THÉRÈSE WILEY DANCKS, United States Ma-
gistrate Judge.

**\*1** This pro se prisoner civil rights action, com-
menced pursuant to 42 U.S.C. § 1983, has been re-
ferred to me for Report and Recommendation by
the Honorable Mae A. D'Agostino, United States
District Judge, pursuant to 28 U.S.C. § 636(b) and
Local Rule 72.3(c). Plaintiff Angelo Johnson
claims that Defendants subjected him to excessive
force, denied him medical care, retaliated against
him for filing grievances, and denied him access to
his attorney. (Dkt. No. 93.) Currently pending be-
fore the Court is Defendants' motion for summary

judgment pursuant to Federal Rule of Civil Proced-
ure 56. (Dkt. No. 117.) For the reasons discussed
below, I recommend that Defendants' motion be
granted in part and denied in part.

### I. FACTUAL AND PROCEDURAL SUMMARY

During the month of May 2008, Plaintiff was
confined at the Chenango County Correctional Fa-
cility as a pretrial detainee. (Dkt. No. 93 ¶¶ 3, 36,
66.) On May 10, 2008, Plaintiff filed a grievance
requesting that he be returned to Sullivan County,
where criminal charges were pending. (Dkt. No. 93
¶¶ 36–37; Dkt. No. 117–9 at 60.) Plaintiff alleges
that Defendant Correction Officer Mark Alemar re-
taliated against him for filing the grievance by
falsely informing his supervisor that Plaintiff had
threatened to stab an officer. (Dkt. No. 93 ¶ 56.) In
response to Defendant Alemar's report, it was de-
termined that Plaintiff should be moved to adminis-
trative segregation. (Dkt. No. 117–15 ¶ 8.) Defend-
ants Ryan, Friot, Hackett, Chesebro, Moscato, Ro-
tundo, and DeMun came to Plaintiff's cell to trans-
port him to administrative segregation. (Dkt. No. 93
¶ 38.) Plaintiff alleges that the officers subjected
him to excessive force without provocation. (Dkt.
No. 93 ¶¶ 42–48.) Defendants assert that they used
only the amount of force appropriate under the cir-
cumstances, given Plaintiff's alleged threats and his
behavior. (Dkt. Nos. 117–12 ¶¶ 3–7, 117–15 ¶¶
3–7, 117–16 ¶¶ 3–7, 117–17 ¶¶ 3–7, 117–18 ¶¶
3–7, 117–19 ¶¶ 3–7.)

Plaintiff alleges that the conditions of confine-
ment in administrative segregation were inhumane.
(Dkt. No. 93 ¶ 49.)

Plaintiff alleges that on May 19, 2008, he was
denied the right to contact his attorney. (Dkt. No.
93 ¶¶ 57–60.) Plaintiff alleges that when he pro-
tested, non-defendant officer Loiselle pepper-
sprayed him in the face and Defendant Christopher
LoCotta punched him in the head. (Dkt. No. 93 ¶
62.) Plaintiff alleges that the officers returned him
to his cell and subjected him to excessive force in

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

the presence of Defendant Tonya Shoales. (Dkt. No. 93 ¶ 65.)

Plaintiff alleges that Defendant Nurse Joanne Locke denied him adequate medical care after these incidents. (Dkt. No. 93 ¶¶ 78–79.)

Plaintiff filed the original complaint in this action on May 11, 2011. (Dkt. No. 1.) The operative pleading is the amended complaint. (Dkt. No. 93.) Defendants answered the amended complaint. (Dkt.Nos .104.) Defendants now move for summary judgment. (Dkt. No. 117.) Plaintiff has opposed the motion. (Dkt. No. 127.) Defendants have filed a reply. (Dkt. No. 133.)

## II. APPLICABLE LEGAL STANDARDS

### A. Legal Standard Governing Motions for Summary Judgment

**\*2** Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord,* 467 F.3d 263, 272–73 (2d Cir.2006). Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Id.* at 273. The nonmoving party must do more than "rest upon the mere allegations ... of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 & n. 11, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc. ., 477 U.S. 242, 248,* 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of material [FN2] fact exists, the Court must resolve

all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.,* 542 F.3d 290, 309 (2d Cir.2008).

> FN2. A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson,* 477 U.S. at 248.

### B. Legal Standard Governing Motions to Dismiss for Failure to State a Claim

To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on the allegations of the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." *Schwartz v. Compagnie Gen. Transatlantique,* 405 F.2d 270, 273 (2d Cir.1968); *accord Katz v. Molic,* 128 F.R.D. 35, 37–38 (S.D.N.Y.1989) ("This Court finds that ... a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties."). Accordingly, it is appropriate to summarize the legal standard governing Federal Rule of Civil Procedure 12(b)(6) motions to dismiss.

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

L.Ed.2d 929 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

**\*3** "In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor ." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

## III. ANALYSIS

### A. Exhaustion of Administrative Remedies

Defendants argue that some or all of Plaintiff's claims are barred because Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA").[FN3] (Dkt. No. 117–21 at 15–16.) Plaintiff argues that, to the extent he did not exhaust his administrative remedies, his failure to exhaust should be excused because Defendants thwarted his attempts to file grievances. (Dkt. No. 127–1 at 6–10.) Because I find that Plaintiff has raised a triable issue of fact, I recommend that the Court schedule this matter for an evidentiary hearing regarding the exhaustion of administrative remedies.

> FN3. Defendants do not appear to argue that Plaintiff failed to exhaust his adminis-

trative remedies regarding the May 10, 2008, incident. The Statement of Material Facts does not state that Plaintiff failed to exhaust his remedies regarding that incident. (Dkt. No. 117–20.) Defendants' memorandum of law states that "the plaintiff failed to exhaust his administrative remedies concerning all allegations in his Complaint, *except arguably for the May 10, 2008 alleged incident.*" (Dkt. No. 117–21 at 16. Citations to page numbers in Defendants' memorandum of law refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.) In the interest of completeness, however, I will address Plaintiff's grievance regarding that incident.

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined. *Jones v. Bock,* 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (citing *Woodford v. Ngo,* 548 U.S. 81, 88, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)). If a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, he has failed to exhaust his administrative remedies. *Woodford,* 548 U.S. at 93.

The Chenango County Correctional Facility has a seven-part inmate grievance procedure. (Dkt.

No. 117–9 at 25–26.[FN4]) First, the inmate must "attempt to reach a solution with the Corrections Officer assigned" to his housing area. *Id.* at 26. Second, the inmate may request an informal complaint form. *Id.* Third, the inmate may request a formal grievance form. *Id.* Fourth, the grievance is investigated and the Investigating Grievance Officer provides a written determination within five business days of receiving the complaint. *Id.* Fifth, the inmate may appeal to the Jail Administrator or his designee within two business days of receiving the Grievance Officer's decision. *Id.* Sixth, the Jail Administrator responds within five business days. *Id.* Seventh, the inmate may appeal to the State Commission of Corrections, which responds within forty-five days. *Id.*

> FN4. Citations to page numbers in the Inmate Rules and Regulations refer to the page numbers assigned by the Court's electronic filing system.

**\*4** As discussed above, in this action, Plaintiff complains of four separate incidents at the Chenango County Correctional Facility: (1) the alleged May 10, 2008, use of excessive force and the alleged failure to provide medical care afterward; (2) the alleged May 19, 2008, use of pepper spray and other excessive force; (3) the alleged conditions of confinement in his cell; and (4) the alleged May 19, 2008, denial of a phone call to his attorney. (Dkt. No. 93 ¶¶ 42–49, 57–60, 62.)

Regarding the first incident, the evidence submitted by Defendants shows that Plaintiff filed a grievance regarding the May 10, 2008, use of excessive force. (Dkt. No. 117–9 at 66–67.) Although the grievance itself does not mention medical care, the facility's investigation of the grievance included an inquiry into the medical care that Plaintiff received. *Id.* at 70. Plaintiff appealed this grievance through all of the applicable steps and received a decision from the State Commission of Corrections dated July 10, 2008. (Dkt. No. 117–9 at 65.) Thus, Plaintiff exhausted his administrative remedies regarding the alleged May 10, 2008, use of force and

denial of medical care.

Regarding the other incidents, however, Plaintiff did not complete the grievance process. His grievance file does not contain any decisions from the State Commission of Corrections regarding the pepper spray incident, his conditions of confinement, or the alleged denial of a phone call to his attorney. (Dkt. No. 117–9 at 59–97.) Therefore, Plaintiff failed to exhaust his administrative remedies regarding three of the incidents of which he complains in this action.

Plaintiff's failure to exhaust, however, does not end the inquiry. The Second Circuit has held that a three-part inquiry is appropriate where a prisoner has failed to exhaust his available administrative remedies. *Hemphill v. New York,* 380 F.3d 680, 686, 691 (2d Cir.2004).[FN5] First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Id.* at 686 (citation omitted). Second, if those remedies were available:

> FN5. The Second Circuit has not yet decided whether the *Hemphill* rule has survived the Supreme Court's decision in *Woodford,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368. *Amador v. Andrews,* 655 F.3d 89, 102 (2d Cir.2011).

the court should ... inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of nonexhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense.

*Id.* (citations omitted). Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative proced-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

ural requirements." *Id.* (citations and internal quotations omitted).

Here, as discussed above, administrative remedies were available to Plaintiff. Defendants preserved the exhaustion defense by pleading it in their answer. (Dkt. No. 104 ¶ 11; *Jones,* 549 U .S. at 216; *Alster v. Goord,* 745 F.Supp.2d 317, 332 (S.D.N.Y.2010).) However, Plaintiff has raised a triable issue that Defendants are estopped from asserting the exhaustion defense. *See Ziemba v. Wezner,* 366 F.3d 161, 162–64 (2d Cir.2004) (district court directed to consider whether defendants were estopped from asserting exhaustion defense where inmate alleged that he was beaten, threatened, denied grievance forms, and transferred to another prison). Plaintiff states in opposition to the motion for summary judgment that Defendant Shoales refused to give him a grievance form when he requested one after the pepper spray incident. (Dkt. No. 127–1 at 7.) In the same document he states that he was not allowed to personally file a grievance regarding his conditions of confinement. *Id.* He states in his verified complaint that when he asked for a grievance form after the alleged phone call incident, non-defendant Loiselle pepper sprayed him in the face and Defendant LoCotta punched him on the side of the head. (Dkt. No. 93 ¶ 62.) Therefore, I recommend that the Court schedule this matter for an evidentiary hearing on the issue of exhaustion of administrative remedies regarding the pepper spray incident, Plaintiff's conditions of confinement, and the phone call incident.

**B. Statute of Limitations**

**\*5** The operative complaint alleges that Defendants committed "assault and battery under State Law." (Dkt. No. 93 ¶¶ 83, 86.) Defendants argue that Plaintiff's state law claims for assault and battery must be dismissed because they are barred by the applicable statute of limitations. (Dkt. No. 117–21 at 10.) Defendants are correct. In New York, such claims are governed by a one-year statute of limitations. N.Y. C.P.L.R. 215(3) (McKinney 2013). Here, the original complaint was not filed

until three years after the alleged incidents at the Chenango County Correctional Facility. (Dkt. No. 1.) Indeed, Plaintiff concedes that the Court should dismiss his state law assault and battery claims. (Dkt. No. 127–1 at 5.[FN6])

> **FN6.** Citations to page numbers in Plaintiff's memorandum of law refer to the page numbers assigned by the Court's electronic filing system.

**C. Notice of Claim Requirements**

Defendants argue that any state law claims that Plaintiff's complaint asserts must be dismissed because Plaintiff's notice of claim was (a) untimely; and (b) insufficiently specific. (Dkt. No. 117–21 at 10–11.) I will address only Defendants' first argument, as it is dispositive.

Under New York law, a plaintiff asserting a tort claim against a county or its employees acting within the scope of their employment must serve a notice of claim on the municipality within ninety days of the claim arising. *Anderson v. Nassau Cnty. Dept. of Corr.,* 558 F.Supp.2d 283, 303 (E.D.N.Y.2008); *Houghton v. Cardone,* 295 F.Supp.2d 268, 280 (W.D.N.Y.2003). If a plaintiff fails to file a timely claim, the plaintiff's state law claims are time-barred. *Houghton,* 295 F.Supp.2d at 280.

Here, the events of which Plaintiff complains occurred in May 2008. (Dkt. No. 93.) Plaintiff signed his notice of claim on October 23, 2008. (Dkt. No. 117–4 at 3.) Thus, he did not timely serve his notice of claim. Plaintiff argues that Defendants should be estopped from asserting the notice of claim defense because they "afforded Plaintiff with misleading information on how to file[ ] the notice of claim." (Dkt. No. 127–1 at 6.) This Court cannot apply the doctrine of estoppel in this case. Although New York law allows state supreme and county courts to excuse late-filed notices of claim, the weight of authority holds that federal courts lack jurisdiction to grant extensions of time to file notices of claim or to deem late-filed notices of

claim as timely. *Crippen v. Town of Hempstead,* No. 07–CV–3478 (JFB)(ARL), 2009 U.S. Dist. LEXIS 24820, at *53–55, 2009 WL 803117, at *17 (W.D.N.Y. Mar. 25, 2009) (collecting cases). Accordingly, Plaintiff's state law claims are barred because he did not timely serve a notice of claim. Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss Plaintiff's state law claims.

**D. Claims Against Defendant Friot**

The operative complaint asserts an excessive force claim against Defendant Sergeant Friot. (Dkt. No. 93 ¶¶ 8, 42–44, 47–48.) In their answer to the original complaint, Defendants asserted that "Sgt. Friot, upon information and belief, is deceased. He is not a properly named defendant." (Dkt. No. 23 ¶ 16.) It is not clear when Defendant Friot died. Defendant Friot was never served. In their motion for summary judgment, Defendants argue that all claims against Defendant Friot should be dismissed. (Dkt. No. 117–21 at 16 .) Defendants are correct. When a party dies prior to being served, the procedure set forth in Federal Rule of Civil Procedure 25 to substitute a "proper party" for the deceased party does not apply, the action against the deceased is a "nullity," and the deceased party should be dismissed with prejudice. *See Lacy v. Tyson,* No. 1:07–cv–00381–LJO–GSA–PC, 2012 U.S. Dist. LEXIS 134932, at * 3–7, 2012 WL 4343837, at * 2–3 (E.D.Cal. Sept.20, 2012) (collecting cases). [FN7] Therefore, I recommend that the Court dismiss the claims against Defendant Friot with prejudice.

> **FN7.** The Court will provide Plaintiff with a copy of all unpublished decisions cited in this Report–Recommendation in accordance with the Second Circuit's decision in *Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009) (per curiam).

**E. Personal Involvement**

**\*6** Defendants argue that the claims against Defendants Parker, Loughren, Schult, Shoales, and Alemar should be dismissed for lack of personal involvement. (Dkt. No. 117–21 at 7–10.) Defendants

are correct regarding Defendants Parker and Loughren.

Under Second Circuit precedent, " 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). In order to prevail on a § 1983 cause of action against an individual, a plaintiff must show some "tangible connection" between the unlawful conduct and the defendant. *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986). If the defendant is a supervisory official, a mere linkage to the unlawful conduct through the prison chain of command (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. *Polk Cnty. v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003) (per curiam); *Wright,* 21 F.3d at 501; *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985) (per curiam). In other words, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996) (citations omitted). Rather, supervisory personnel may be considered personally involved if they: (1) directly participated in the violation; (2) failed to remedy that violation after learning of it through a report or appeal; (3) created, or allowed to continue, a policy or custom under which the violation occurred; (4) had been grossly negligent in managing subordinates who caused the violation; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (citations omitted). [FN8]

> **FN8.** In *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court ruled that where the underlying constitutional claim is a claim of intentional discrimination, a supervisory

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

official's liability must be judged by the official's purpose rather than the official's knowledge of subordinates' actions or policies. The Second Circuit has not yet issued a decision discussing *Iqbal'* s effect on the *Colon* categories. Several district courts in the Second Circuit have determined that *Iqbal* nullified some of the *Colon* categories. *See Sash v. United States,* 674 F.Supp.2d 531, 543–44 (S.D.N.Y.2009) (collecting cases). I will assume for the purposes of this motion that *Colon* remains good law.

### 1. *Defendant Parker*

Defendant Parker's name appears in the caption of the operative complaint (Dkt. No. 93 at 1) and in the list of parties (*Id.* ¶ 17). However, the only mention of him in the body of the operative complaint is that he was present when pictures were taken of Plaintiff's injuries after the May 10, 2008, incident. *Id.* ¶ 54. Plaintiff concedes that any claim against Defendant Parker should be dismissed for lack of personal involvement. (Dkt. No. 127–1 at 15.) Therefore, I recommend that the Court grant Defendants' motion, dismiss the claims against Defendant Parker, and terminate him as a defendant in this action.

### 2. *Defendant Loughren*

The complaint alleges that Defendant Loughren "is the Sheriff of Chenango County and is responsible for operating and maintaining the order of Chenango County Correctional Facility." (Dkt. No. 93 ¶ 6.) The complaint does not contain any substantive allegations regarding Defendant Loughren. In opposition to Defendants' motion for summary judgment, Plaintiff argues that Defendant Loughren, as Sheriff, "was obliged to at leas[t] have construct[ive] knowledge" about the welfare and safety of each inmate at the Chenango County Correctional Facility. (Dkt. No. 127–1 at 13.) Plaintiff also argues that Defendant Loughren should have received reports about the incidents of May 10, 2008, and May 19, 2008, through his

"channel of communication." *Id.* Plaintiff argues that Defendant Loughren's alleged subsequent failure to adequately train, instruct, supervise, and control his subordinates constitutes gross negligence or recklessness. *Id.* at 14.

**\*7** Plaintiff's arguments do not establish Defendant Loughren's personal involvement. A prisoner's allegation that a supervisory official failed to respond to a grievance is insufficient to establish that the official "failed to remedy that violation after learning of it through a report or appeal" or "exhibited deliberate indifference ... by failing to act on information indicating that the violation was occurring." *Rivera v. Goord,* 119 F.Supp.2d 327, 344–45 (S.D.N.Y.2000). *See also Watson v. McGinnis,* 964 F.Supp. 127, 130 (S.D.N.Y.1997) ("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability."). Similarly, "an allegation that an official ignored a prisoner's letter of protest and request for investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." *Johnson v. Wright,* 234 F.Supp.2d 352, 363 (S.D.N.Y.2002). Moreover, a supervisor's referral of a complaint to a subordinate for investigation does not constitute personal involvement. *Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997); *see also Wright v. Genovese,* 694 F.Supp.2d 137, 161 (N.D.N.Y.2010). Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss the claims against Defendant Loughren for lack of personal involvement.

### 3. *Defendant Schult*

The complaint alleges that Defendant Schult "is employed as a correctional lieutenant at Chenango County Correctional Facility and is generally responsible for assisting in its day to day operations and executes its policies." (Dkt. No. 93 ¶ 7.) Plaintiff alleges that Defendant Schult placed him in administrative segregation. *Id.* ¶¶ 56, 66. Defendants' statement of material facts asserts that "Plaintiff has alleged that Lt. Schult ordered his ad-

ministrative segregation beginning on May 10, 2008. However, he was ordered to be moved to administrative segregation by Sgt. George Ryan." (Dkt. No. 117–20 ¶ 4.) However, Defendant Schult's affidavit states that "Sergeant George Ryan caused plaintiff to be moved to Administrative Segregation, *which was approved and reviewed by myself.*" (Dkt. No. 117–8 ¶ 5, emphasis added.) Defendant Schult's affidavit establishes that Defendant Schult was actively involved in the decision to place Plaintiff in administrative segregation. Thus, Defendant Schult has not demonstrated that he lacked personal involvement. Therefore, I recommend that the Court deny Defendants' motion for summary judgment dismissing Defendant Schult for lack of personal involvement.

### 4. *Defendant Shoales*

The complaint alleges that Defendant Shoales "is employed as a correctional sergeant at Chenango County Correctional Facility and is generally responsible for the supervision of employees, detainees and executes the facility's policies." (Dkt. No. 93 ¶ 9.) Plaintiff alleges that Defendant Shoales granted him permission to place a legal call on May 19, 2008. *Id.* ¶ 57. In the verified complaint, Plaintiff alleges that Defendant Shoales was present when Defendant LoCotta hit Plaintiff numerous times in the head and body on May 19, 2008, but did nothing to prevent or stop the assault. *Id.* ¶¶ 65, 82. In her affidavit filed in support of the motion for summary judgment, Defendant Shoales states that "I was involved in the May 19, 2008 incident where the plaintiff was pepper-sprayed as a result of his failure to comply with the orders of corrections officers ... My only involvement was to order that plaintiff be decontaminated." (Dkt. No. 117–14 ¶ 11.) Defendant Shoales' affidavit establishes that she was personally involved in the May 19, 2008, incident. Therefore, I recommend that the Court deny Defendants' motion for summary judgment dismissing Defendant Shoales for lack of personal involvement.

### 5. *Defendant Alemar*

**\*8** The complaint alleges that Defendant Alemar "is a correctional officer employed at the Chenango County Correctional Facility and is generally responsible for the supervision of detainees and executes the facility's policies." (Dkt. No. 93 ¶ 11.) Plaintiff alleges that he requested a grievance form from Defendant Alemar on May 10, 2008, at approximately 7:30 a.m. *Id.* ¶ 36. Defendant Alemar asked him why he wanted the form. *Id.* Plaintiff explained, was given a form, filled it out, and returned it to Defendant Alemar. *Id.* Plaintiff alleges that Defendant Alemar then falsely told his supervisor that Plaintiff had threatened to stab an officer, which led to Plaintiff being assaulted and placed into administrative segregation. *Id.* ¶¶ 56, 70. Plaintiff alleges that Defendant Alemar opened the cell door for the other officers when they used excessive force later that day. *Id.* ¶ 39. In an affidavit filed in support of the motion for summary judgment, Defendant Alemar provides his version of his conversation with Plaintiff regarding grievance forms, describes filing an inmate violation report accusing Plaintiff of making threats, intimidating staff members, and engaging in conduct disrupting the safety, security and good order of the facility, and states that he remained at the officer's station and did not follow the other defendants into Plaintiff's cell. (Dkt. No. 117–23 ¶¶ 9–10.) Defendant Alemar's affidavit establishes that he was personally involved in the May 10, 2008, incident. Therefore, I recommend that the Court deny Defendants' motion for summary judgment dismissing Defendant Alemar for lack of personal involvement.

### F. Excessive Force

### 1. *May 10, 2008, Incident*

Defendants argue that they are entitled to summary judgment dismissing Plaintiff's excessive force claims regarding the May 10, 2008, incident. (Dkt. No. 117–21 at 14.) For the reasons discussed below, I find that Plaintiff has raised a triable issue of fact and therefore Defendants' motion for summary judgment should be denied.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

When prison officials are "accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 6–7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).[FN9] "In determining whether the use of force was wanton and unnecessary," the court should evaluate "the need for application of force, relationship between that need and the amount of force used, the threat reasonably perceived by responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* at 7 (citation and quotation marks omitted). Not:

> FN9. The legal standard applicable to pretrial detainees' allegations of excessive force is identical to the *Hudson* Eighth Amendment standard. *United States v. Walsh,* 194 F.3d 37, 47 (2d Cir.1999).

every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of cruel and usual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.
**\*9** *Id.* at 9 (citations and internal quotation marks omitted).

Defendants argue that they are entitled to summary judgment because "the plaintiff cannot establish that he sustained an injury of sufficient severity, worthy of Eighth Amendment protection." (Dkt. No. 117–21 at 14.) Defendants misstate the applicable standard. The "core judicial inquiry" in an excessive force case is "not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm ." *Wilkins v. Gaddy,* 559 U.S. 34, 37, 130 S.Ct. 1175, 175 L.Ed.2d 995 (2010) (per curiam) (punctuation and citations omitted). The degree of a prisoner's injury is relevant in some ways. For

instance, the extent of any injury suffered by the inmate "is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Hudson,* 503 U.S. at 7 (citation and quotation marks omitted). The degree of injury suffered by a prisoner "may also provide some indication of the amount of force applied." *Wilkins,* 559 U.S. at 37. But "[i]njury and force ... are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without grievous injury." *Id.* at 38.

Here, Plaintiff alleges in his verified complaint that, without provocation, Defendants Ryan, Friot, Hackett, Chesebro, Mocato, Rotundo, and DeMun banged his head against his cell wall, placed him in manacle restraints, choked him, kicked him, beat him, and dragged him until he was in a state of semi-consciousness. (Dkt. No. 93 ¶¶ 38–48.) Defendants Ryan, Hackett, Chesebro, Mocato, Rotundo, and DeMun declare that they used appropriate force on Plaintiff to move him to administrative segregation based on their observations of his behavior and their belief that he had threatened to stab an officer. (Dkt. Nos. 117–12 ¶¶ 3–7, 117–15 ¶¶ 3–7, 117–16 ¶¶ 3–7, 117–17 ¶¶ 3–7, 117–18 ¶¶ 3–7, 117–19 ¶¶ 3–7.) The competing versions of what transpired do not establish that either party is entitled to judgment as a matter of law. Rather, these competing versions raise triable issues of fact for a jury to determine. Therefore, I recommend that the Court deny Defendants' motion for summary judgment dismissing Plaintiff's excessive force claim regarding the May 10, 2008, incident.

2. *May 19, 2008, Incident*
Defendants argue that they are entitled to summary judgment dismissing Plaintiff's excessive force claim regarding the May 19, 2008, incident

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

because the:

> affidavit of C.O. LaCotta demonstrates that the aggressive conduct of the plaintiff resulted in C.O. Loiselle administering a ... one-second burst of oleoresin capsicum 'pepper spray', toward plaintiff. As set forth in plaintiff's complaint, he was ordered to decontamination by Sgt. Shoales. While plaintiff makes further allegations of alleged 'hitting' to his head and body, he suffered no injury.

**\*10** (Dkt. No. 117–21 at 15.) For the reasons discussed below, I find that Plaintiff has raised a triable issue of fact.

Plaintiff states in his verified complaint that on May 19, 2008, non-defendant Loiselle pepper sprayed him in the face and Defendant LoCotta punched him in the side of the head after Plaintiff requested a grievance form. (Dkt. No. 93 ¶ 62.) Plaintiff further alleges that Defendant LoCotta, without provocation, hit him "numerous times upon the head and body." *Id.* ¶ 65. Defendant LoCotta, conversely, declares that Loiselle used the pepper spray because Plaintiff "made an aggressive, sudden move from his bunk toward us" and that "[o]nly the appropriate level of force was used." (Dkt. No. 117–11 ¶¶ 11, 13.) The competing versions of what transpired do not establish that either party is entitled to judgment as a matter of law. Rather, these competing versions raise triable issues of fact for a jury to determine. Therefore, I recommend that the Court deny Defendants' motion for summary judgment dismissing Plaintiff's excessive force claim regarding the May 19, 2008, incident.

### G. Equal Protection

Read broadly, the complaint alleges that Defendants violated his right to equal protection by "allowing him to remain in administrative segregation without the minimum basic supplies afforded to other inmates housed on the unit with the same status." (Dkt. No. 93 ¶ 85.) In opposition to the motion for summary judgment, Plaintiff argues that he

"was intentionally treated differently from other similarly-situated individuals without any rational basis. Notably, [a]ll other inmates in Adseg were entitle[d] to their minimum standards, due process and were from that county and wasn't (sic) black and from Monticello." (Dkt. No. 127–1 at 21.) Defendants argue that they are entitled to summary judgment dismissing Plaintiff's equal protection claim because "the record is devoid of any evidence to create a question of fact" and because Plaintiff "fails to plead that similarly situated individuals were treated differently or that he is pleading a 'class of one' Equal Protection Claim." (Dkt. No. 117–21 at 12.)

The Equal Protection Clause provides that "no State shall ... deny to any person within its jurisdiction the equal protection of the laws." *U.S. Const. amend. XIV, § 1.* This is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).* The Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.' " *Bizzaro v. Miranda, 394 F.3d 82, 86 (2d Cir.2005)* (quoting *LeClair v. Saunders, 627 F.2d 606, 609–10 (2d Cir.1980)*). Governmental action may also violate the Equal Protection Clause where the defendants intentionally treat the plaintiff "differently from others with no rational basis for the difference in treatment." *Id.* (citing *Vill. of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000)*). Thus, a plaintiff asserting an equal protection claim must prove that (1) he was treated differently from similarly situated individuals; and (2) the defendants treated him differently due to his membership in a suspect class, inhibited his exercise of a fundamental right, FN10 acted out of malice, or acted irrationally and arbitrarily.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

FN10. The fundamental rights protected by the Equal Protection Clause, as identified by the United States Supreme Court, fall into six substantive categories: (1) the right to freedom of association; (2) the right to vote; (3) the right to interstate travel; (4) the right to fairness in the criminal process (which includes the right to counsel and the right of access to the courts); (5) the right to procedural due process; and (6) the right to privacy "which includes various forms of freedom of choice in matters relating to the individual's personal life" such as freedom of choice in marital decisions, child bearing, and child rearing. 2 Ronald D. Rotunda & John E. Nowak, *Treatise On Constitutional Law Substance and Procedure*, § 15.7 (4th ed.2010).

**\*11** Where a plaintiff asserting an equal protection cause of action alleges that he or she was treated differently from similarly situated individuals on the basis of race, proof of racially discriminatory animus or purpose is required. *Bussey v. Phillips,* 419 F.Supp.2d 569, 581 (S.D.N.Y.2006). Such intent can be shown in "several ways, including by identifying a law or policy that expressly classifies persons on the basis of race, a facially neutral law or policy that has been applied in an intentionally discriminatory manner, or a facially neutral statute or policy that has an adverse effect and is motivated by discriminatory animus." *Id.* Here, other than the bare allegation in his opposition papers that "[a]ll other inmates in Adseg were entitle[d] to their minimum standards, due process and were from that county and wasn't (sic) black and from Monticello," Plaintiff has not alleged or produced any evidence of racial animus. (Dkt. No. 127–1 at 21.) Therefore, Defendants are entitled to summary judgment on Plaintiff's equal protection claim to the extent that he argues that he was the victim of racial discrimination.

Plaintiff may also be asserting an equal protection claim on a "class of one" theory. (Dkt. No.

127–1 at 19.) To prove such a claim, a plaintiff must show that:

> no rational person could regard the circumstances of the plaintiff to differ from those of a comparator or to a degree that would justify the differential treatment on the basis of a legitimate government policy; and [that] the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake.

*Neilson v. D'Angelis,* 409 F.3d 100, 105 (2d Cir.2005) *overruled on other grounds by Appel v. Spiridon,* 531 F.3d 138 (2d Cir.2008). There must be an "extremely high" level of similarity between the plaintiff and the persons with whom he compares himself. *Neilson,* 409 F.3d at 104. Furthermore, class of one plaintiffs are required to prove "intentional disparate treatment, that is, [they must] demonstrate the decisionmakers were aware that there were other similarly-situated individuals who were treated differently." *Analytical Diagnostic Labs, Inc. v. Kusel,* 626 F.3d 135, 143 (2d Cir.2010) (quoting *Giordano v. City of New York,* 274 F.3d 740, 751 (2d Cir.2001) (internal quotes omitted). Here, Plaintiff has produced no such evidence. Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss Plaintiff's equal protection claims.

**H. Due Process**

Plaintiff alleges that Defendants violated his rights under the Fourteenth Amendment. (Dkt. No. 93 ¶ 86.) Read broadly, this can be construed as an allegation that Defendant Alemar violated Plaintiff's right to procedural due process by falsely reporting that Plaintiff threatened to stab a corrections officer, which resulted in Plaintiff being placed in administrative segregation. Defendants move for summary judgment of this claim. (Dkt. No. 117–21 at 12–13.) Because I find that Plaintiff was not deprived of a liberty interest, I recommend that the Court grant Defendants' motion for summary judgment and dismiss the procedural due process claim.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**\*12** A prisoner's claim that a correctional officer filed a false misbehavior report may implicate the Fourteenth Amendment right to procedural due process. *Freeman v. Rideout,* 808 F.2d 949 (2d Cir.1986); *Franco v. Kelly,* 854 F.2d 584 (2d Cir.1988); *Jones v. Coughlin,* 45 F.3d 677 (2d Cir.1995). The Second Circuit has held that while a prisoner "has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest," he *does* have "the right not to be deprived of a protected liberty interest without due process of law." *Freeman,* 808 F.2d at 951. An inmate has a liberty interest in remaining free from a confinement or restraint where the confinement or restraint imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *Tellier,* 280 F.3d at 80; *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996). "Post-*Sandin,* the decisions in the Second Circuit are unanimous that [disciplinary] confinement of 30 days or less" is not an atypical or significant hardship. *Gssime v. Burge,* No. 6:08–CV–6404 (MAT), 2013 U.S. Dist. LEXIS 94827, at \* 6–7, 2013 WL 3423816, at \* 2 (W.D.N.Y. July 8, 2013) (collecting cases). Here, Plaintiff was held in administrative segregation only from May 10, 2008, to May 31, 2008. (Dkt. No. 93 ¶ 66.) This confinement of less than thirty days does not implicate a liberty interest. Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss Plaintiff's due process claim.

## I. Retaliation

Plaintiff alleges that Defendants retaliated against him for filing a grievance by falsely reporting that he had threatened to stab an officer, assaulting him, denying him a legal phone call, and denying him medical care. (Dkt. No. 93 ¶¶ 72–73.) Defendants argue that the complaint fails to state a retaliation claim. (Dkt. No. 117–21 at 19–20.) Defendants are correct.

Claims of retaliation find their roots in the First Amendment. *See Gill v. Pidlypchak,* 389 F.3d 379, 380–81 (2d Cir.2004). Central to such claims is the notion that in a prison setting, corrections officials may not take actions that would have a chilling effect upon an inmate's exercise of First Amendment rights. *See Gill,* 389 F.3d at 381–383. Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983). As the Second Circuit has noted,

[t]his is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.

**\*13** *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001) (citations omitted), *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

To state a retaliation claim under 42 U.S.C. § 1983, a plaintiff must allege facts plausibly suggesting that: (1) the speech or conduct at issue was "protected"; (2) the defendants took "adverse action" against the plaintiff—namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action—in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Gill,* 389 F.3d at 380 (citing

*Dawes v. Walker,* 239 F.3d 489, 492 (2d. Cir.2001)
).

Plaintiff alleges that Defendants retaliated against him for filing a grievance. (Dkt. No. 93 ¶ 72.) The filing of a grievance against prison officials is constitutionally protected conduct. *Scott v. Coughlin,* 344 F.3d 282, 288 (2d Cir.2003); *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996). Therefore, the complaint states a claim regarding the first element of Plaintiff's retaliation claim.

Plaintiff alleges that Defendants took adverse actions against him by falsely accusing him of threatening to stab an officer, assaulting him, denying him a legal phone call, and denying him medical care. (Dkt. No. 93 ¶ 73.) The Second Circuit defines " 'adverse action' objectively, as retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights.' " *Gill,* 389 F.3d at 381 (quoting *Davis v. Goord,* 320 F.3d 346, 353 (2d Cir.2003), *superceded by* 320 F.3d 346, 2003 U.S.App. LEXIS 13030, 2003 WL 360053 (2d Cir. Feb.10, 2003)). The Second Circuit has "made clear that this objective test applies even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits." *Id.* The filing of a false misbehavior report is an adverse action for retaliation purposes. *Gill v. Pidlypchak,* 389 F.3d 379, 384 (2d Cir.2004). In addition, an alleged use of excessive force "is retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Edwards v. McGrain,* No. 09–CV–582S, 2012 U.S. Dist. LEXIS 181981, at * 16, 2012 WL 6701826, at * 6 (W.D.N.Y. Dec.26, 2012) (Schroeder, Mag. J.). Therefore, Plaintiff has alleged facts plausibly suggesting the second element of his retaliation claim.

Regarding the third element, several factors may be considered in determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions. *Baskerville v. Blot,* 224 F.Supp.2d 723, 732 (S.D.N.Y.2002)

(citing *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)). Those factors include the temporal proximity between the protected activity and the alleged retaliatory act and statements by the defendant concerning his or her motivation. *Id.* (citing *Colon,* 58 F.3d at 872–73). "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Id.*

**\*14** Here, the complaint adequately alleges the temporal proximity factor because Plaintiff alleges that Defendants made a false report, assaulted him, and denied him medical care the same day that Plaintiff filed a grievance. (Dkt. No. 93 ¶ 72.) The Second Circuit has held that the passage of "only six months" is sufficient to support an inference of a causal connection. *Espinal v. Goord,* 558 F.3d 119, 129 (2d Cir.2009) (citing *Gorman–Bakos v. Cornell Coop. Extension,* 252 F.3d 545, 555 (2d Cir.2001)).

The complaint does not, however, allege any statements by any of the Defendants suggesting that they were motivated by a desire to punish Plaintiff for filing grievances. The complaint alleges, rather, that Defendants Ryan and Friot told Plaintiff that they were beating him and moving him to administrative segregation because they were "tired of you Sullivan County inmates" who "think you're gangsters." (Dkt. No. 93 ¶¶ 41, 48.)

The Second Circuit has held in the context of employment law that where "timing is the only basis for a claim of retaliation ... an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance Am. Corp.,* 248 F.3d 87, 95 (2d Cir.2001). The Second Circuit routinely cites to employment cases when discussing retaliation in the prison law context. *See e.g. Espinal,* 558 F.3d at 129 (citing *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)). Thus, it is appropriate to apply the *Slattery* rule here. Here, the only connection that Plaintiff can draw between his protected conduct and the alleged adverse actions is temporal proximity. Given the scrutiny and

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

skepticism with which courts are required to view claims of retaliation, I recommend that the Court grant Defendants' motion for summary judgment and dismiss Plaintiff's retaliation claims.

**J. Conditions of Confinement**

Plaintiff alleges that he was subjected to unconstitutional conditions of confinement when he was left "in a cold cell without the minimum basic supplies, e.g., blankets, sheets, soap or writing materials." (Dkt. No. 93 ¶ 49.) He testified to those same conditions, using almost precisely the same words and providing no more detail, at his deposition. (Dkt. No. 117–3 at 136:22–137:1.[FN11]) Defendants move for summary judgment of Plaintiff's conditions of confinement claim, arguing that these conditions do not rise to the level of a constitutional violation. (Dkt. No. 117–21 at 17–18.) Defendants are correct.

> FN11. Citations to page numbers in Plaintiff's deposition transcript refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

To establish a conditions of confinement claim, a plaintiff must prove both an objective and a subjective component. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). To satisfy the objective component, a prisoner must show that the defendant's "act or omission ... result[ed] in the denial of the minimal civilized measure of life's necessities." *Id.* Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian,* 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To satisfy the subjective component, the plaintiff must show that the defendant acted with "deliberate indifference." *Wilson v. Seiter,* 501 U.S. 294, 302–03, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). A prison official demonstrates deliberate indifference to inhumane conditions of confinement where he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837.

**\*15** Here, the conditions that Plaintiff cursorily described in his complaint and at his deposition are insufficient to raise a triable issue of fact. *See Davidson v. Murray,* 371 F.Supp.2d 361, 371–73 (W.D.N.Y.2005) (defendants' motion for summary judgment granted where plaintiff alleged simply that he was 'steadfastly and routinely denied' hygiene items such as toothpaste, soap, toilet tissue, and cleaning items over a three-year period but refused to provide any details of the deprivation). Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss Plaintiff's conditions of confinement claim.

**K. Failure to Intervene**

Read broadly, the complaint asserts failure to intervene claims against Defendants Shoales, Alemar, and Schult. (Dkt. No. 93 ¶¶ 39, 62–65, 84–85.) Defendants move for summary judgment dismissing these claims. (Dkt. No. 117–21 at 18–19.)

> Law enforcement officials can be held liable under § 1983 for not intervening in a situation where excessive force is being used by another officer. Liability may attach only when (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene.

*Jean–Laurent v. Wilkinson,* 540 F.Supp.2d 501, 512 (S.D.N.Y.2008).

Regarding Defendant Shoales, the complaint alleges that she (1) inquired what had happened after the pepper spray incident; (2) ordered that Plaintiff be decontaminated; (3) supervised Defendant LoCotta and another officer as they escorted Plaintiff back to his cell; and (4) was present when Defendant LoCotta hit Plaintiff, who was still hand-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

cuffed, "numerous times upon the head and body." (Dkt. No. 93 ¶¶ 62–65.) Defendants argue that the failure to intervene claim against Defendant Shoales should be dismissed because "she was not present for the alleged attack." (Dkt. No. 117–21 at 18–19.) Defendants are correct regarding the pepper spray incident. However, Defendants have not addressed the allegation that Defendant Shoales was present while Defendant LoCotta used excessive force on Plaintiff. Therefore, I recommend that the Court deny Defendants' motion for summary judgment dismissing the failure to intervene claim against Defendant Shoales.

Regarding Defendant Alemar, the complaint alleges that he opened Plaintiff's cell door for the Defendants who allegedly used excessive force on Plaintiff on May 10, 2008. (Dkt. No. 93 ¶ 39.) Defendants argue that Defendant Alemar was not, in fact, present at Plaintiff's cell at the time of the alleged assault. (Dkt. No. 11–21 at 19.) Defendant Alemar declares that he remained at the officer's station and did not follow the other officers to Plaintiff's cell. (Dkt. No. 117–13 ¶ 10.) Plaintiff does not dispute that fact in his statement of material facts in opposition to the motion for summary judgment. (Dkt. No. 127 ¶ 27; Dkt. No. 117–20 ¶ 27.) The section of Plaintiff's memorandum of law in opposition to the motion for summary judgment discussing Defendant Alemar does not address the failure to intervene claim. (Dkt. No. 127–1 at 17–18.) The evidence before the Court does not establish that Defendant Alemar had a realistic opportunity to intervene and prevent the harm allegedly caused by the other officers on May 10, 2008. Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss the failure to intervene claim against Defendant Alemar.

*16 Regarding Defendant Schult, the complaint alleges that he:

> exercised deliberate indifference to plaintiff's health and safety when he intentionally failed to respond to plaintiff's complaint of being abused physically ... by Chenango County Correctional Facility's employees. Defendant Schult's deliberate indifference to plaintiff's health and safety had further been openly demonstrated when he deliberately failed to investigate the allegations contained within plaintiff's complaint(s) of being assaulted by Correctional Officers and by allowing him to remain in administrative segregation without the minimum basic supplies afforded to other inmates housed on the unit with the same status.

(Dkt. No. 93 ¶¶ 84–85.) "[A]n allegation that an official ignored a prisoner's letter of protest and request for investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." *Johnson v. Wright,* 234 F.Supp.2d 352, 363 (S.D.N.Y.2002). "There is ... no constitutional right to an investigation by government officials." *Lewis v. Gallivan,* 315 F.Supp.2d 313, 317 (W.D.N.Y.2004) (quoting *Stone v. Dept. of Investigation,* 1992 U.S. Dist. LEXIS 1120, 1992 WL 25202 (S.D.N.Y. Feb.4, 1992) and *Gomez v. Whitney,* 757 F.2d 1005, 1006 (9th Cir.1985)) (granting defendant's motion for summary judgment dismissing prisoner's claim against inspector general for failure to investigate alleged assault). Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss the claims against Defendant Schult.

**L. Medical Care**

Plaintiff alleges that Defendant Locke violated his constitutional right to receive adequate medical care when she refused to fulfill's Plaintiff's requests for follow-up care at a hospital emergency room and refused to provide him with pain medication. (Dkt. No. 93 ¶¶ 78–79.) Plaintiff argues that Defendant Locke disregarded and failed to adequately treat injuries to his back, right knee, and left eye, which ultimately resulted in a permanent scar above his eye and degeneration to his knee. (Dkt. No. 127–1 at 24.) Defendants move for summary judgment of this claim, arguing that Plaintiff can estab-

lish neither the objective nor the subjective prong of his medical care cause of action. (Dkt. No. 117–21 at 20–23.)

Prison officials must ensure that inmates receive adequate medical care. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citing *Hudson v. Palmer,* 468 U.S. 517, 526–27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)). There are two elements to a prisoner's claim that prison officials violated his or her right to receive adequate medical care: "the plaintiff must show that she or he had a serious medical condition and that it was met with deliberate indifference." *Caiozzo v. Koreman,* 581 F.3d 63, 72 (2d Cir.2009) (citation and punctuation omitted). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter,* 316 F.3d 178, 183–84 (2d Cir.2003) (citation omitted).

**\*17** Regarding the objective prong, a "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J., dissenting) (citations omitted), *accord Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995); *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998). Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain. *Chance,* 143 F.3d at 702–03. "Courts in this circuit have almost uniformly found ... knee injuries to be insufficient to ... support a deliberate indifference claim." *Johnson v. Wright,* 477 F.Supp.2d 572, 575–76 (W.D.N.Y.2007) (punctuation omitted)

(collecting cases). Similarly, the types of lacerations that Plaintiff describes do not rise to the level of a "serious medical condition." *See Rickett v. Orsino,* No. 10 Civ. 5152(CS)(PED), 2013 U.S. Dist. LEXIS 42544, at \* 61–64, 2013 WL 1176059, at \*17 (S.D.N.Y. Feb. 20, 2013) (collecting cases). Therefore, Plaintiff has not established the objective prong of his medical deliberate indifference claim and Defendants are entitled to summary judgment.

Even if Plaintiff could raise a triable issue of fact as to the objective prong, he could not raise a triable issue as to the subjective prong. Medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act ... that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Id.* at 703 (quoting *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996). Thus, to establish deliberate indifference, an inmate must prove that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer,* 511 U.S. at 837; *Chance,* 143 F.3d at 702. The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer,* 511 U.S. at 835. An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle,* 429 U.S. at 105–06. Moreover, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim ... under the Eighth Amendment." *Id.* at 106. Stated another way, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.; see also Smith,* 316 F.3d at 184 ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation."). Here, Defendant Locke has filed a declaration describing the care that she provided to Plaintiff im-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

mediately after the incidents on May 10 and 19, 2008. (Dkt. No. 117–10.) Defendant Locke provided thorough treatment for the injuries that she observed. *Id.* She provided Motrin for Plaintiff's pain. *Id.* ¶¶ 7, 9. Other than his general allegations that Defendant Locke was deliberately indifferent, Plaintiff has not submitted any evidence raising a triable issue of fact. Therefore, I recommend that the Court grant Defendants' motion for summary judgment of Plaintiff's medical deliberate indifference claim.

**M. Access to Courts**

**\*18** Plaintiff alleges that Defendant LoCotta interfered with his right of access to the courts by not allowing him to complete an authorized phone call to his attorney. (Dkt. No. 93 ¶ 80.) Defendants move for summary judgment dismissing this cause of action, arguing that Plaintiff has failed to allege that he suffered any actual injury. (Dkt. No. 117–21 at 23–24.) Defendants are correct.

"A prisoner has a constitutional right of access to the courts for the purpose of presenting his claims, a right that prison officials cannot unreasonably obstruct and that states have affirmative obligations to assure." *Washington v. James,* 782 F.2d 1134, 1138 (2d Cir.1986) (citing *Bounds v. Smith,* 430 U.S. 817, 821–23, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977)). This right of access, however, guarantees a prisoner "no more than reasonable access to the courts." *Herrera v. Scully,* 815 F.Supp. 713, 725 (S.D.N.Y.1993) (citing *Pickett v. Schaefer,* 503 F.Supp. 27, 28 (S.D.N.Y.1980)). To state a claim for denial of access to the courts, a plaintiff must allege facts plausibly suggesting that (1) the defendant acted deliberately and maliciously, and (2) the plaintiff suffered an actual injury. *Lewis v. Casey,* 518 U.S. 343, 353, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *Howard v. Leonardo,* 845 F.Supp. 943, 946 (N.D.N.Y.1994) (Hurd, M.J.). Here, Plaintiff has alleged no actual injury. (Dkt. No. 93.) Therefore, I recommend that the Court grant Defendants' motion and dismiss Plaintiff's access to courts cause of action.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 117) be ***GRANTED IN PART AND DENIED IN PART.*** It is recommended that the Court (1) dismiss Plaintiff's state law claims as time-barred and for failure to timely serve a notice of claim; (2) dismiss all claims against deceased Defendant Friot with prejudice; (3) dismiss all claims against Defendant Parker for lack of personal involvement and terminate him from this action; (4) dismiss all claims against Defendant Loughren for lack of personal involvement and terminate him from this action; (5) dismiss Plaintiff's equal protection claim; (6) dismiss Plaintiff's procedural due process claim; (7) dismiss Plaintiff's retaliation claims; (8) dismiss Plaintiff's conditions of confinement claims; (9) dismiss the failure to intervene claims against Defendants Alemar and Schult; (10) dismiss the medical care claim against Defendant Locke and terminate her from this action; and (11) dismiss Plaintiff's access to courts claim. It is recommended that the Court deny the motion as to (1) the excessive force claims against Defendants Ryan, Hackett, Chesebro, Moscato, Rotundo, and DeMon regarding the May 10, 2008, incident; (2) the excessive force claim against Defendant LoCotta regarding the May 19, 2008, incident; and (3) the failure to intervene claim against Defendant Shoales; and it is further

**RECOMMENDED** that the Court schedule this matter for an evidentiary hearing on the issue of the exhaustion of administrative remedies regarding the alleged May 19, 2008, use of pepper spray, the alleged conditions of confinement, and the alleged May 19, 2008, phone call incident; and it is further

**\*19 ORDERED** that the Clerk correct the caption to list Defendant "Sgt. Shoale" as "Sgt. Tonya Shoales;" and it is further

**ORDERED** that the Clerk provide Plaintiff with copies of *Crippen v. Town of Hempstead,* No. 07–CV–3478 (JFB)(ARL), 2009 U .S. Dist. LEXIS

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 5466218 (N.D.N.Y.)
**(Cite as: 2013 WL 5466218 (N.D.N.Y.))**

24820, 2009 WL 803117 (W.D.N.Y. Mar. 25, 2009); *Edwards v. McGrain,* No. 09–CV–582S, 2012 U.S. Dist. LEXIS 181981, 2012 WL 6701826 (W.D.N.Y. Dec.26, 2012); *Gssime v. Burge,* No. 6:08–CV–6404 (MAT), 2013 U.S. Dist. LEXIS 94827, 2013 WL 3423816 (W.D.N.Y. July 8, 2013) ; *Lacy v. Tyson,* No. 1:07–cv–00381–LJO–GSA–PC, 2012 U.S. Dist. LEXIS 134932, 2012 WL 4343837 (E.D.Cal. Sept.20, 2012); and *Rickett v. Orsino,* No. 10 Civ. 5152(CS)(PED), 2013 U.S. Dist. LEXIS 42544, 2013 WL 1176059 (S .D.N.Y. Feb. 20, 2013).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAIL-URE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPEL-LATE REVIEW. Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir.1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a).

N.D.N.Y.,2013.
Johnson v. Schiff
Slip Copy, 2013 WL 5466218 (N.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.


Not Reported in F.Supp.2d, 2000 WL 297197 (S.D.N.Y.)
(Cite as: 2000 WL 297197 (S.D.N.Y.))

**H**
Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
ELMA RT and NAGYKOROS CANNING FACTORY
RT, Plaintiffs,
v.
LANDESMANN INTERNATIONAL MARKETING
CORPORATION, Landesmann International Marketing
Services GmbH, Mark Landesmann, individually, and
Tamas Batizi, individually, Defendants.
**No. 98 CIV. 3662 LMM.**

March 22, 2000.

MEMORANDUM AND ORDER

MCKENNA, D.J.

**\*1** Plaintiffs Elma RT ("Elma") and Nagykoros Canning Factory RT ("Nagykoros"), both Hungarian companies, brought this suit against defendants Landesmann International Marketing Corporation ("LIMC"), Mark Landesmann ("Landesmann"), Landesmann International Marketing Services GmbH ("LIMS") and Tamas Batizi ("Batizi"), based on contracts for the sale of apple juice concentrate by plaintiffs to defendants. LIMC is a Delaware corporation with its principal place of business in New York, and Landesmann is LIMC's sole owner and CEO. LIMS is an Austrian corporation with a place of business in the United States, and Batizi is LIMS's managing director. The citizenship of Landesmann and Batizi is not specifically alleged, but the former is alleged to have been born in Austria but to reside in the United States, while the latter is alleged to be located in Austria.

Plaintiffs assert both federal question and diversity subject matter jurisdiction. Federal question subject matter jurisdiction is supplied by a claim under the Racketeer and Corrupt Organizations Act ("RICO"). On the face of the amended complaint, however, diversity subject matter jurisdiction is not available, since both the plaintiffs are alien corporations and at least one of the defendants, LIMS, is an alien as well. *Lloyds Bank PLC v. Norkin,* 817 F.Supp. 414, 417 (S.D.N.Y.1993) (collecting cases).

In their amended complaint, plaintiffs allege that LIMC committed breach of contract, fraud, and conversion. Plaintiff Nagykoros also seeks consequential damages against LIMC. In addition, plaintiffs jointly claim that defendants violated RICO, 18 U.S.C. § 1962(c).

Defendants move to dismiss plaintiffs' amended complaint on three grounds. First, they argue it is actually a supplemental complaint, which was served without leave of the court, in violation of Fed.R.Civ.P. 15(d) ("Rule 15(d)"). Second, they claim the RICO and conversion counts fail to state a claim under Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"). Finally, they argue that the RICO count fails to plead fraud with particularity under Fed.R.Civ.P. 9(b) ("Rule 9(b)"). For the reasons set forth below, the Court denies defendants' motion to dismiss the complaint under Rule 15(d), but grants the motion to dismiss the conversion and RICO claims under Rule 12(b)(6). Because the RICO count is dismissed, the Court need not address whether that claim is pleaded with sufficient particularity under Rule 9(b).

*I. Background*

A. Plaintiff Elma

The following background is based upon plaintiffs' amended complaint, which is based partially on information and belief.

On November 14, 1997, Landesmann entered into a contract with Elma whereby Elma agreed to provide LIMC with thirty containers (approximately six hundred tons) of apple juice concentrate. Landesmann agreed to pay fifty percent of the contract price upon dispatch, and the remaining fifty percent within thirty-five days of the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 297197 (S.D.N.Y.)
(Cite as: 2000 WL 297197 (S.D.N.Y.))

Bill of Lading.

**\*2** Pursuant to the contract, Elma delivered thirty containers of concentrate to LIMC, which accepted them without objection. LIMC made the initial payment for one-half the total amount owed. However, LIMC made no further payments to Elma. Instead, on February 9, 1998 (approximately the day on which the remaining payments were due) Landesmann informed Elma that LIMC was rejecting all thirty containers on quality grounds. Landesmann further demanded replacement of the concentrate and immediate reimbursement for all payments already made by LIMC, including shipping costs.

In response, Elma directed LIMC not to dispose of the concentrate. In addition, Elma requested: 1) an independent laboratory be named for testing of the concentrate, with costs to be split equally between ELMA and LIMC; 2) proof that the concentrate was handled properly in transit and subsequent storage; and 3) that LIMC disclose the location of the concentrate.

Landesmann, however, agreed to permit inspection only under the following conditions: 1) LIMC retain the sole right to name any testing facility; 2) Elma bear sole responsibility for payment of the testing costs; 3) the testing facility be allowed to disclose the results only to LIMC; and 4) the identity and location of the inventory not be disclosed to Elma. Elma objected to these demands, but agreed to replace the concentrate. Landesmann notified Elma by letter that he would accept replacement only if it was tendered in the New York/New Jersey area, instead of in Hungary, the location specified in the contract. In addition, Landesmann demanded full reimbursement for all expenses and costs, including financing. Finally, he demanded that Elma arrange, test, and send a substantial portion of the replacement cargo within three business days of receiving Landesmann's letter. When Elma refused these demands, Landesmann resold the concentrate.

B. Plaintiff Nagykoros

The facts alleged by Nagykoros are similar to those alleged by Elma. In November of 1997, LIMC entered into three separate contracts with Nagykoros whereby Nagykoros agreed to provide LIMC with fifty containers of apple juice concentrate. Fifty percent of the contract price was to be paid after dispatch and transfer of possession, and the remaining fifty percent was to be paid within forty-five days after arrival. Pursuant to the agreement, Nagykoros delivered the fifty containers to LIMC, which received them without objection. LIMC then paid for one-half of the amount due on the first ten containers delivered. On February 4, 1998, however, Landesmann notified Nagykoros that LIMC was rejecting all fifty containers of concentrate on quality grounds.

Nagykoros directed Landesmann not to dispose of the concentrate, and informed him that, under Hungarian law, Nagykoros would suffer severe consequential damages if the contract was not fulfilled. Nagykoros also requested information to enable the stock of concentrate to be properly examined, suggested a neutral quality control agency for testing, and offered to pay for the testing if Landesmann's claim proved justified. Landesmann refused to permit inspection and testing of the apple juice concentrate unless: 1) the quality control agency be ordered that it was working on defendants' behalf; 2) Nagykoros prepay the control agency; and 3) Nagykoros keep the location of the inventory confidential.

**\*3** After weeks of inconclusive attempts between the parties to negotiate, Nagykoros informed Landesmann that if the parties did not reach a settlement of some kind, the Hungarian Ministry of Agriculture would fine Nagykoros approximately $150,000, and Nagykoros would possibly default on bank loans. Landesmann, however, proceeded to resell the concentrate.

*II. Discussion*

A. Rule 15(d)

Defendants argue that plaintiffs' amended complaint alleges events which occurred after the original complaint was filed, and therefore is actually a supplemental complaint which, to be filed, requires leave of the Court under Rule 15(d). While plaintiffs dispute that theirs is a

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 297197 (S.D.N.Y.)
(Cite as: 2000 WL 297197 (S.D.N.Y.))

supplemental complaint, the Court need not decide which party is correct. Even assuming the complaint is properly labeled "supplemental," there is no compelling reason why this mislabeling should be fatal. Absent undue delay, bad faith, dilatory tactics, undue prejudice in being served with the proposed pleading, or futility, motions to serve a supplemental pleading will be freely granted. *See Forman v. Davis,* 371 U.S. 178, 182 (1962). The fact that a complaint is improperly labeled as "amended" instead of "supplemental" should not prevent the Court from considering the merits of the pleading. *See Sorel v. G & U, Inc.,* 103 F.R.D. 69, 73 (S.D.N.Y.1984). Thus, plaintiffs' motion to dismiss on this ground is denied.

B. Rule 12(b)(6) Standards

On a motion to dismiss under Rule 12(b)(6), a court must accept the truth of and draw all reasonable inferences from the well-pleaded factual allegations. *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993). The Court's task is to "assess the legal feasibility of the complaint [and] not ... assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrucci,* 616 F.2d 636, 639 (2d Cir.1980); *see also Riccuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 124 (2d Cir.1991). A complaint should only be dismissed "if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." ' *Valmonte v. Bane,* 18 F.3d 992, 998 (2d Cir.1994)(quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).

C. Conversion

Plaintiffs allege that defendants committed conversion by refusing to pay the balance due for the concentrate, not accepting replacement, not allowing return of the rejected concentrate, and proceeding to re-sell the concentrate without plaintiffs' consent. Defendants in turn move under Rule 12(b)(6) to dismiss plaintiffs' conversion claim, arguing that it merely reasserts their breach of contract claim. This motion is granted.

Conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to

the exclusion of the owner's rights. *Vigilant Ins. Co. of America v. Housing Auth. of El Paso, Texas,* 87 N.Y.2d 36, 44 (1995). Under New York law, it is well established that an action for conversion cannot be validly maintained where a plaintiff seeks damages merely for breach of contract. *See Fraser v. Doubleday & Co.,* 587 F.Supp. 1284, 1288 (S.D.N.Y.1984). To sustain a conversion claim, a plaintiff must allege acts that constitute unlawful or wrongful behavior separate from a violation of contractual rights. *See id.; see also In re Chateaugay Corp.,* 10 F.3d 944, 958 (2d Cir.1993) (holding that a tort claim will not arise where plaintiff is essentially seeking enforcement of the bargain); *New York Univ. v. Continental Ins. Co.,* 87 N.Y.2d 308, 316 (1995) (holding that a defendant may be liable in tort where it breaches a duty of reasonable care distinct from its contractual obligations, and where it engages in tortious conduct separate and apart from its failure to fulfill its contractual obligations).

**\*4** To determine whether an action for conversion (or any other tort) exists in addition to an action for breach of contract, a court must first ask whether "the alleged obligation to do or not to do something that was breached could not have existed but for a manifested intent." W. Page Keeton, et al., *Prosser & Keeton on the Law of Torts* § 92 (5th ed.1984). In other words, the Court must determine whether defendants had a duty separate from any duties imposed by defendants' contractual obligations. If no such duty exists, then contract is the only theory upon which liability can rest. *Id.*

In the present case, defendants' duty to return the concentrate, accept replacement, and refrain from resale exists solely because of the contract between the parties. Outside the contract, there was no pre-existing obligation imposed by law which required defendants to honor plaintiffs' requests. This is apparent by the fact that if plaintiffs are successful on their breach of contract claim, they will be fully compensated for the balance due on the concentrate delivered to defendants, and therefore, no additional damages would be available to them under a theory of conversion.[FN1] *See Fraser,* 587 F.Supp. at 1288. Plaintiffs' argument that defendants' conduct amounted to conversion because it violated the Uniform Commercial Code ("U.C.C.") does not sway the Court otherwise. Indeed, this argument actually lends credence to the conclusion that any remedies they may be owed exist

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 297197 (S.D.N.Y.)
(Cite as: 2000 WL 297197 (S.D.N.Y.))

under a breach of contract claim alone, since the U.C.C. governs contract, not tort, disputes.

> FN1. Punitive damages may be awarded for conversion, but the defendants must allege that defendants acted with malice or reckless disregard of plaintiffs' rights. *See Ashare v. Mirkin, Barre, Saltzstein & Gordon,* 435 N.Y.S.2d 438, 441 (Sup.Ct.1980), *modified on appeal to delete punitive damages,* 441 N.Y.S.2d 408 (2d Dep't.1981), *aff'd,* 54 N.Y.2d 891 (1981). Plaintiffs have failed to allege malice or reckless disregard of their rights.

For the reasons stated above, plaintiffs' conversion claim is dismissed.

D. RICO

Plaintiffs also allege that defendants' conduct violated RICO. To state a claim for damages under 18 U.S.C. § 1962(c), a complaint must specifically allege:

(1) the existence of an enterprise which affects interstate or foreign commerce;

(2) that the defendants were "employed by" or "associated with" the enterprise;

(3) that the defendants participated in the conduct of the enterprise's affairs; and

(4) that the participation was through a pattern of racketeering activity.

*Clifford v. Hughson,* 992 F.Supp. 661, 665 (S.D.N.Y.1998) (quoting *Town of West Hartford v. Operation Rescue,* 915 F.2d 92, 100 (2d Cir.1990)).

Defendants argue that plaintiffs have failed to properly allege the existence of an "enterprise." Additionally, defendants argue that the amended complaint fails to allege the predicate acts FN2 and "continuity" needed to show a "pattern of racketeering activity." They therefore move to dismiss plaintiffs' RICO claim under Rule 12(b)(6). Since the Court finds that plaintiffs have failed to allege "continuity," the RICO claim is dismissed.

> FN2. The predicate acts alleged in this case are mail and wire fraud.

Plaintiffs must allege "continuity" as a prerequisite for the existence of a "pattern of racketeering activity." *See H.J Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 230 (1989). In other words, the predicate acts must be related, and must constitute or threaten long-term criminal activity. *Id.* Such continuity can be either "closed" or "open-ended." *Id.* Plaintiffs apparently concede that closed-ended continuity is not present in this case. FN3 Therefore, the issue before the Court is whether the requirements of open-ended continuity have been satisfied.

> FN3. Closed-ended continuity is established by proving a series of related predicate acts extending over a substantial period of time. *H.J. Inc.,* 492 U.S. at 230 (holding that predicate acts extending over a few weeks or months and threatening no future criminal conduct did not satisfy the requirement of continuity). The time period involved here, four months, clearly cannot be called "substantial."

**\*5** Open-ended continuity requires the threat of long-term racketeering activity. *Id.* This threat is indicated when the predicate acts themselves involve a distinct threat of such future racketeering activity, are part of the regular way of doing business for an ongoing entity (be it a criminal association or legitimate business), or are a regular means of conducting or participating in an ongoing RICO enterprise. *Id.* Ordinarily, however, courts will not find a threat of future racketeering in "cases concerning alleged racketeering activity in furtherance of endeavors that are not inherently unlawful, such as frauds in the sale of property ...." *United States v. Aulicino,* 44 F.3d 1102, 1111 (2d Cir.1995).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 297197 (S.D.N.Y.)
(Cite as: 2000 WL 297197 (S.D.N.Y.))

In the present case, plaintiffs have inadequately pleaded open-ended continuity. In conclusory fashion, they allege only that "the fraudulent activities of the Enterprise continue to this day." (Compl.¶ 250). However, they offer no specificity as to what the fraudulent activities involve. Moreover, they have not claimed that the alleged "enterprise" depends on the commission of fraudulent acts "in the conduct of its day to day affairs," a factor courts have often looked to in determining whether fraudulent activity constitutes an entity's "regular way of doing business." *See, e.g., Mead v. Schaub,* 757 F.Supp. 319, 323 (S.D.N.Y.1991). Furthermore, plaintiffs fail to allege that defendants pursued an "inherently unlawful" goal. Under the facts alleged in the complaint, the only endeavor that could be attributed to defendants' actions is the desire to resell goods for a profit, which is the lawful goal of nearly every business. As noted above, unless an "inherently unlawful" pursuit is involved, continuity is not ordinarily inferred.

For all the above reasons, the Court dismisses plaintiffs' RICO claim. [FN4]

> FN4. Because the Court grants defendants' motion to dismiss the RICO claim for lack of "continuity," it is unnecessary to decide whether plaintiffs have alleged the existence of an "enterprise" distinct from defendants or the predicate acts needed to establish a "pattern of racketeering activity." It is also unnecessary to decide whether the alleged predicate acts were pleaded with sufficient particularity under Rule 9(b). While the Court declines to opine as to the validity of these arguments, it appears likely that, in addition to the complaint's shortcomings in alleging continuity, it is also deficient in the other areas challenged by defendants.

### III. Conclusion

For the foregoing reasons, defendants' motion to dismiss the amended complaint pursuant to Rule 15(d) is denied. However, defendants motion to dismiss plaintiffs' conversion and RICO claims under Rule 12(b)(6) is granted.

With the dismissal of the RICO claim, the Court does not have federal subject matter jurisdiction, and, for the reason set forth above, it does not have diversity subject matter jurisdiction. The Court declines, pursuant to 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction over plaintiffs' remaining claims. Accordingly, the amended complaint is dismissed.

The Court grants plaintiffs leave to file a second amended complaint within 30 days of the date hereof.

SO ORDERED

S.D.N.Y.,2000.
Elma RT v. Landesmann Intern. Marketing Corp.
Not Reported in F.Supp.2d, 2000 WL 297197 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.